UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Joel D. Clendening, | : | Case No. 5:09CV2111 |
| Plaintiff | : | Judge Kathleen O'Malley |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claim for disability benefits, 42 U.S.C. §§416(i), 423, is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks plaintiff's motion for remand under sentence six or under sentence four of 42 U.S.C. §405(g).

Plaintiff applied for benefits on May 9, 2006, alleging an onset date of June 2, 1993. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "Parkinson's disease, cervical disc disease" and "see doctor report."

Of critical importance in this case is that the plaintiff's fully insured status, a requisite of eligibility for the benefits he seeks, expired on March 31, 1999. Therefore, in order to be awarded benefits the plaintiff must establish disability existing no later than that terminal date.

Upon denial of plaintiff's claim on the state agency level hearing de novo before an

Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on May 16, 2008. Also testifying at that proceeding was a vocational expert, Mr. Ted Macy.

At the outset of that hearing plaintiff's counsel explained to the ALJ that in the period pertinent to the plaintiff's alleged onset date to the expiration of his fully insured status the plaintiff received his medical care from his ex-wife who was a physician and that there were no records:

> ALJ: Have you asked her if she has any records that she kept during that period?
>
> CLMT: We're not on speaking terms, Your Honor.
>
> ALJ: Mr. Friedlander, was there any attempt?
>
> ATTY: Yeah, they're very acrimonious, and there's no cooperation whatsoever, but her attorney assured me that there were no records of treatment and things like that.
>
> ALJ: So that's—so you did—
>
> ATTY: Oh, yes.
>
> ALJ: —request—
>
> ATTY: Oh, yes.
>
> ALJ: And the answer was there are no treatment records?
>
> ATTY: That's correct.
>
> ALJ: If there aren't, the aren't.
>
> ATTY: Yes.
>
> ALJ: There's nothing we can do about that at this time.
>
> ATTY: That's right, and it was unfortunate because of two reasons. One is, as you all know, and as I know, but

>           what Mr. Clendening didn't know, that it would be in
>           his best interest to have filed in 1993, 1994, 1995,
>           any of those years—
>
> ALJ:      Right.
>
> ATTY:     But that's water over the dam.
>
> ALJ:      All right. Well, at least we know. There's no—that
>           answers my question. There has been an attempt
>           made to get the records that would be relevant to the
>           period of time for the treatment from your former
>           wife, but there is no records, and, again, if somebody
>           says they don't have something, it's hard to prove
>           negative. Its' hard to prove, well, yes, you did, so
>           we're kind of where—we're at this juncture, and
>           we'll go forward with what we've got.
>
> ATTY:     Thank you, Judge.

When asked by his counsel why he left his employment with the Diebold Company in 1993 as "director of service, it was marketing worldwide" the plaintiff testified to symptoms consistent with the existence of Parkinson's disease. He described hand tremors, pain throughout his body, loss of balance, and inability to concentrate with lapse of memory.

On June 13, 2008 the ALJ entered his decision finding the plaintiff not disabled, which stands as the defendant's final determination consequent to denial of review by the Appeals Council on January 10, 2009. The ALJ's "Findings of Fact and Conclusions of Law" were:

>   1. The claimant met the insured status requirements of the Social
>      Security Act through March 31, 1999.
>
>   2. The claimant has not engaged in substantial gainful activity since
>      June 2, 1993, the alleged onset date (20 CFR 404.1520(b) and
>      404.1571 *et seq*.).
>
>   3. Through March 31, 1999, when the claimant's disability insured
>      status expired, the claimant had the following severe impairments:
>      status post arthroscopy and partial medical meniscectomy of the

      right knee due to torn medial meniscus in September 1993 and status post arthroscopy, partial medial meniscectomy of the left knee, with arthroscopically assisted reconstruction of anterior cruciate ligament in February 1997 due to an acute ligamentous injury of the left knee  (20 CFR 404.1520(c)).

4. Through March 31, 1999, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work which involves lifting and carrying up to 20 pounds occasionally, 10 pounds frequently, pushing and pulling 20 pounds occasionally and 10 pounds, frequently, sitting, standing and walking for six hours each in an eight hour day, no climbing of ladders, ropes and scaffolds, occasional climbing of ramps and stairs, and occasional kneeling, crouching, and crawling, 20 CFR 404.1567(b).[1]

6. The claimant is capable of performing his past relevant work as a director of marketing.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

Taking up first plaintiff's motion for remand pursuant to the sixth sentence of §405(g), that statute provides:

> The court may. . .at any time order that additional evidence be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

The evidence relied upon in support of this motion is a record of a one day visit to a hospital in July 1990 with complaints of "severe pain, limitation of motion of his shoulder <u>of several weeks</u>

---

[1] Although the ALJ found the plaintiff capable of performing a limited range of light work, given the plaintiff's age and education at the date he was last insured he would be deemed not disabled under the Social Security "grids" even if limited to sedentary work.  <u>See</u>, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1, Rule 201.27, *et seq*.

duration" (emphasis added), and "To Whom It May Concern" letters written by two physicians in July and August 2008, Dr. Kamal Muakkassa and Dr. Robert Erickson, neither of whom had treated the plaintiff in the time period proximal from his stopping working to the expiration of his fully insured status.

As far as the hospital record is concerned, this Court does not consider a shoulder problem which developed in mid-1990, over a year after the plaintiff's fully insured status expired and seven years after he stopped working, to be material to his claim of disability. In addition, that 1990 record existed at the time of the 2008 evidentiary hearing, and no explanation has been offered as to the failure to have it made a part of the record at that time.

As to the letters from the physicians, this Court finds that they too fail the materiality test.

The letter from Dr. Muakkassa is essentially repetitive of one he had written in 2006. In each of his letters he attributes the plaintiff's limitations to cervical spondylosis and degenerative disc disease, which he refers to as a progressive disease, and acknowledges that it was only diagnosed by X-rays taken in 2003. He nevertheless speculates that "this gentlemen must have started his problems of the cervical spine between 10 to 15 years prior to 2003" which would (a) mean that it existed while the plaintiff was working and (b) sheds no light as to what level of severity it may have been as of March 31, 1999. And it does not speak to the plaintiff's contention that he is disabled by virtue of Parkinson's disease.

The problem with Dr. Erickson's after the fact letter is that he attributes the plaintiff being "permanently impaired," which is not the same as being unable to work, to a knee injury the plaintiff suffered in 1997, whereas the plaintiff maintains that he has been disabled, since 1993 by reason of Parkinson's disease.

Turning to the motion for remand pursuant to the fourth sentence of §405(g), several arguments are advanced on behalf of the plaintiff as to errors, substantive and procedural, allegedly committed by the ALJ.

Assuming, without deciding, that the ALJ did err in some respects this Court would find any such errors to be harmless. This Court finds that not only is there a total failure of the medical evidence to support the plaintiff's claim of disability from Parkinson's disease no later than March 31, 1999, let alone as of June 1993, but that the plaintiff's medical records refute that claim.

Taking up that evidence in chronological order, the first item is a record dated August 31, 1993 from the Timken Mercy Medical Center where the plaintiff was being seen for a knee injury. Included therein is the statement "The patient is right handed, in excellent health."

There is then a seven year gap, to a letter from Dr. Dennis Glazer to Dr. Richard Weil under date of October 27, 2000. The plaintiff had consulted Dr. Glazer concerning an injury to his right elbow as a result of banging it on a door. In that letter Dr. Glazer stated "He tells me his health is good."

An office note of Dr. Glazer dated May 23, 2003 reflects that he saw the plaintiff with complaints of pain between his shoulder blades down to his arms of two weeks duration. Therein the doctor noted "His review of symptoms is otherwise within normal limits."

In November of 2003 Dr. Muakkassa wrote Dr. Weil concerning seeing the plaintiff with complaints of tingling in the scrotal area which spread to the plaintiff's chest and arm. In that letter he stated "I saw him in the office today and aside from these symptoms he has no major neurological deficits."

The first mention of Parkinson's disease appears in a letter from Dr. Leon Rosenberg to the

plaintiff's wife, Dr. Marilyn Clendening, dated January 13,2004. That letter commences:

> Thank you for the referral of your husband and patient. I saw him on January 13th for further evaluation of a number of different symptoms. <u>He tells me that his medical issues started in approximately May 2003</u>. (Emphasis added.)

Dr. Rosenberg's diagnostic impression was "The patient has a number of symptoms and findings that would be consistent with Parkinson's disease," which is the first reference to that disease in any medical evidence.

Finally, there is a report of neurological examination by Dr. Rosenberg dated February 23, 2004, setting out the diagnosis of Parkinson's disease. In that report he stated:

> The patient continues in divorce proceedings with his wife. She called here and since I had his permission to talk to her I confirmed by [sic] opinion that he does indeed have Parkinson's disease. <u>He appears to be fully functional at this point</u>. (Emphasis added.)

Dr. Rosenberg's "To Whom It May Concern" letter that he wrote in October of 2006 stating "The patient has been totally disabled since at least 1993" is hardly reconcilable with his earlier statements that plaintiff reported that his medical issues started in approximately May 2003 and/or that as of February 2004 the plaintiff appeared to be fully functional, although diagnosed as suffering from Parkinson's disease.

In light of the foregoing, it must be concluded that the ALJ's holding that the plaintiff had not established that he was disabled by reason of Parkinson's disease at any time prior to March 31, 1999 was, at the very least, within his zone of choice, <u>see</u>, <u>Mullen v. Bowen</u>, 800 F.2d 535, 545 (6th Cir. 1986), under the substantial evidence standard of <u>Richardson v. Perales</u>, 402 U.S. 389 (1971).

It is recommended that final judgment be entered in the defendant's favor.

                                                               s/DAVID S. PERELMAN
                                                               United States Magistrate Judge

DATE:    September 29, 2010

## OBJECTIONS

      Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).